IN THE SUPERIOR COURT OF DOUGHERTY
COUNTY

FILED
2011 MAR -8  PH 12: 50

EVONNE S. MULL
DOUGHERTY COUNTY
CLERK OF COURTS
$200.00

STATE OF GEORGIA

JUSTIN LASTER
    Plaintiff

CIVIL ACTION

v.

FILE NO.  11 CV 460-1

KRYSTAL HOLDINGS, INC.
(The Krystal Company)
(Olivia Roberts, Steve Brown)
        &
THOMAS & THORNGREN, INC.
(Michael McDonald)
    Defendants

March 7, 2011


EXHIBIT
A

*11CV460-1*

FILED

Damages

2011 MAR -8  PM 12: 50

Compensatory Damages

EVONNE S. MULL
DOUGHERTY COUNTY
CLERK OF COURTS

Deformation of Character and Wrongful Termination; Actions in
Nature of Making False Statements to Justify Termination, Libel;
Liquidated Damages

**Complaint, petition, or declaration----For damages----
Deformation of Character, Wrongful Termination, and Making
False Statements to Justify Termination, Libel---Multiple
Defendants**

## COMPLAINT

Plaintiff, Justin Laster, alleges:

1. Plaintiff is now, and at all times mentioned in this complaint
was, a resident of 2014 Armory Drive, Americus, Sumter, Georgia.

2. Defendant Olivia Roberts of The Krystal Company, is, and at all
times mentioned in this complaint was, a corporation organized
and existing under the laws of Georgia with its principal place of
business located at 1605 North Slappey Boulevard, Albany,
Dougherty, Georgia.

3. Defendant Steve Brown of The Krystal Company, is, and at all
times mentioned in this complaint was, a corporation organized
and existing under the laws of Georgia with its principal place of
business located at 1605 North Slappey Boulevard, Albany,
Dougherty, Georgia.

4. Defendant Michael McDonald of the Thomas & Thorngren, Inc.,
is, and at all times mentioned in this complaint was, a corporation

organized and existing under the laws of Tennessee with its principal place of business located at 1 Vantage Way Suite A-105 Nashville, Davidson, Tennessee. On July 27, 2010 I received a call from my General Manager Olivia Roberts at the Krystal Restaurant on 1605 North Slappey Boulevard at 2:40p.m. concerning an incident that occurred at work 2 weeks prior on July 14, 2010 concerning a female employee named Tianna May, a Customer Service Representative of The Krystal Company. Olivia Roberts asked me did I ask the female employee was she wearing undergarments underneath her clothes and I told her, "Yes I did because I was tired of getting complaints from her and other female employees that they were being sexually harassed by male customers on the night shift of which I worked the majority of the time I worked for The Krystal Company on North Slappey Boulevard. My District Supervisor was informed of the incident by my General Manager Olivia Roberts and I was called in to meet them at the Krystal Restaurant to discuss the incident. I told Steve Brown the same statement that I told my General Manager, and Steve Brown, my District Supervisor told me that I was on suspension without pay until the incident was investigated thoroughly and not to come up to the Krystal Restaurant until the investigation was completed by the Human Resources Department of the Krystal Company. On August 2, 2010 I received a phone call from Steve Brown, my District Supervisor at 10:00a.m. to come to the Krystal Restaurant to discuss the results of the investigation of the incident. I arrived at the Krystal Restaurant at 12:00p.m. and met with my General Manager Olivia Roberts and my District Supervisor Steve Brown to be informed that I was being terminated because of my inappropriate behavior of asking the female employee, Tianna May, was she wearing undergarments under her clothes. I discussed with Steve Brown and Olivia Roberts of I was doing my job to stop her and the other female employees of being sexually harassed by the male customers by making sure they wore proper undergarments under their uniform to not cause attention to

themselves and stop the sexual harassing comments and acts the male customers made toward them on the night shift of which I worked, and they ignored my dissatisfaction of The Krystal Company and their decision to terminate me for doing my job. I received my Separation Notice from my General Manager Olivia Roberts on August 9, 2010 and I filed for Unemployment on August 11, 2010. On August 27, 2010, the Georgia Department of Labor approved my Unemployment Benefits. On September 16, 2010, The Krystal Company and Thomas and Thorngren, Inc. appealed the decision of the Georgia Department of Labor approval of my Unemployment Benefits. The Georgia Department Of Labor scheduled a Hearing on my Unemployment Benefits on October 12, 2010 at 10:15a.m. The Georgia Department of Labor mailed their decision of the Hearing on October 13, 2010 stating that I was approved to keep my Unemployment Benefits because they saw where I exhibited no inappropriate behavior at work, no sexual harassment of a female employee (Tianna May), and no violating of the company policy.

5. The defendants defamed my character to justify terminating me for doing my job to protect the company from a sexual harrassment lawsuit and make the appropriate decisions while running my shift at the Krystal Company Restaurant in Albany, GA. failed and refused to follow the Federal guidelines of the Fair Labor Standards Act to save money and to get a bonus as a reward of saving labor for The Krystal Company.

6. The defendants Olivia Roberts and Steve Brown of The Krystal Company and Michael McDonald of Thomas & Thorngren, Inc. has failed and refused to follow the Employment Protection Laws that protect employees from employers defaming their character to justify terminating them to make them ineligible to receive

unemployment benefits from being terminated from work.

7. The failure and refusal of the defendants to comply with the Employment Protection Laws has damaged the plaintiff in the following manner: defamation of character, damages, and loss of wages.

WHEREFORE, plaintiff requests judgment against defendants for:

1. Compensatory damages in the amount of $20,000,000;

2. $10,000,000 from The Krystal Company and $10,000,000 from Thomas & Thorngren, Inc.

3. Such other and further relief as the court may deem just and proper.

Dated: March 7, 2011
Respectfully submitted,

Justin Laster

2014 Armory Drive

Americus, GA 31719

(229) 591-8259

(229) 924-0407

(850) 559-5276

THE KRYSTAL COMPANY

&

THOMAS & THORNGREN

**ANTE LITEM NOTICE**

TO: JAMES F. EXUM, JR.

PRESIDENT & CHIEF EXECUTIVE OFFICER (The Krystal
Company)

TO: STEPHEN L. THOMAS

PRESIDENT & CHIEF EXECUTIVE OFFICER (Thomas &
Thorngren, Inc.)

KRIS R. THORNGREN

My name is Justin Laster and I worked at The Krystal Company
ALB002 1605 North Slappey Boulevard in Albany, GA beginning
on January 4, 2010 until August 2, 2010 and on August 2, 2010 I
was terminated by The Krystal Company Olivia Roberts, the
General Manager of Krystal ALB002 Restaurant and Steve Brown,
the District Supervisor because I allegedly sexually harassed a
female employee at work. Michael McDonald defended Olivia
Roberts, Steve Brown, and The Krystal Company decision of my
termination of employment in that I sexually harassed a female
employee at work, thus, defaming my character and caused an
appealing of my Unemployment Benefits by a letter stating such
allegations. My character was defamed and I lost my job, wage,
and income. I am looking for action to be taken and a response in

this matter.

Thank you,

Justin Laster

3/4/11



# THOMAS & THORNGREN



client-centered detail-driven

August 20, 2010

Georgia Department of Labor
PO Box 740052
Atlanta, GA  30374

To Whom It May Concern:

The following information was requested by you in regards to an unemployment claim that was filed by the following individual:

| | | | |
|---|---|---|---|
| Employee: | LASTER JUSTIN D | First Day of Work: | 01/04/2010 |
| | ▬▬▬▬▬ | Last Day of Work: | 08/03/2010 |
| Employer: | THE KRYSTAL COMPANY | | |
| | THE KRYSTAL RESTAURANT - ALB02 | | |
| | Account #: 035102-03 | | |

**Separation Reason**

This individual was discharged for violation of a company policy.

The claimant was discharged for sexual harassment.

Please contact Michael McDonald at 615-242-8246 for additional information. Please forward the determination issued for this claim to our office at the address below.

Sincerely,

*Michael McDonald*

Michael McDonald
Account Representative

```
NM48                          FACT FINDING INQUIRY                        09/16/10
  S01   SSN 256 57 7055   BYB  08 11 10   CWB  08 08 10      EMPLID  5512    15:23:19
 JUSTIN D LASTER          FACT FINDING OF: CLAIMANT          DATE ENTERED 08/27/10
 SEPARATION              EMPLOYER NAME    THE KRYSTAL COMPANY
                         TYPE ISSUE       DISCHARGED
                    CHANGE DATE      08 31 10              CHG EMPLID    5512
08-27-10 9:00 CT IN INTRANET AND CORR DETAILS OF FINAL INCIDENT COURTESY
CALL GIVEN 229-815-2296...9:00 ...APPEAL RIGHTS GIVEN....IMC
CORRECTION CT AND CORR IN IMAGE...IMC




NA:       PF: 3-PREVMENU  4-MN00  5-PRT  7-BKWD  8-FRWD  9-PSCR  11-NA
```

NM48                        FACT FINDING INQUIRY                        09/16/10
 S01    SSN 256 57 7055    BYB  08 11 10   CWB  08 08 10   EMPLID  5512   15:23:07
 JUSTIN D LASTER           FACT FINDING OF: EMPLOYER       DATE ENTERED 08/27/10
 SEPARATION                EMPLOYER NAME    THE KRYSTAL COMPANY
                           TYPE ISSUE       DISCHARGED
                   CHANGE DATE      08 31 10              CHG EMPLID   5512
08-27-10 9:00 FF IN INTRANET CALLED EMP THOMAS & THORNGREN LEFT V.M. FOR
MICHAEL MCDONALD REQUESTING DETAILS REPLY DUE 08-31-10 9:00 CONSEQ GIVEN..IMC

08-31-10 1:30 NO RESPONSE...IMC


NA:      PF: 3-PREVMENU  4-MN00  5-PRT  7-BKWD  8-FRWD  9-PSCR  11-NA

GEORGIA DEPARTMENT OF LABOR

NOTICE OF APPEAL FILING                    Docket:   51239A-2010

SSN: ███████                               FSO:  1200

APPELLANT: EMPLOYER

CLAIMANT:                                  EMPLOYER:

JUSTIN LASTER                              THE KRYSTAL CO., INC.
2014 ARMORY DR.                            C/O THOMAS & THORNGREN, INC
AMERICUS, GA 31719                         PO BOX 280100
                                           NASHVILLE, TN  37228


TELEPHONE  229-815-2296              TELEPHONE  229-439-2657


THE DECISION IS IN ERROR FOR THE FOLLOWING REASON(S):


       COPY OF APPEAL STATEMENT ATTACHED TO ADVISE OTHER PARTY OF
       REASON FOR APPEAL AS FURNISHED BY THE APPEALING PARTY



                            INFORMATION

A request for an appeal hearing in the above matter has been filed. In
the next few days, a hearing will be scheduled.

PLEASE NOTIFY THE APPEALS TRIBUNAL IMMEDIATELY IF:
   (1)   there are specific dates or times that you, your witnesses or
         your representative will not be available for a hearing,
   (2)   your address and telephone number are not correct or changes,
   (3)   you want the Notice of Hearing to be mailed to a different
         address than the address on this Notice.
   (4)   you want the Notice of Hearing mailed to a representative who
         will be participating in the hearing, or
   (5)   you do not consent to a telephone hearing.  You should telephone
         the Appeals Tribunal at (770) 909-2828, or write to the Appeals
         Tribunal at the address on the next page, to make your objection
         known.  See information on the HEARING (next page).

READ CAREFULLY the enclosed pamphlet (DOL-424B) and excerpts from the
applicable law (DOL-451).   The appeal hearing is your only due process
opportunity to present all relevant evidence, testimony and witnesses on
your behalf.

WARNING TO CLAIMANT :  You MUST CONTINUE TO REPORT AS INSTRUCTED for
each week you wish to claim benefits, either through OLIVoR, by mail
or in person.  Failure to do so may result in a denial of benefits.  If,
as a result of this appeal, a disqualification is placed against your
claim, you will have to repay any benefits received.
                            DOL-423B(1) (9/98)

JUSTIN LASTER   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                                    51239A-2010

POSTPONEMENT:   NO postponement of the scheduled hearing will be granted except in an extreme emergency, which is not within the party's control.

SCHEDULING:   A date, time and location for the hearing will be established.   A Notice of Hearing (DOL-424A) will be mailed to all parties.

HEARING:   The hearing will be conducted by an Administrative Hearing Officer in person or by telephone conference.   The Appeals Tribunal will schedule the hearing as in person or by telephone based upon the information provided by the parties and in the claim file.   If you do not consent to a telephone hearing, you should make your objection known to the Appeals Tribunal immediately upon receipt of this notice to avoid any delay in scheduling.   A party that does  not consent to a telephone hearing will have to travel to the hearing location nearest the other party for an in person hearing.

ASSISTANCE:   Immediately direct inquiries concerning this appeal, special scheduling instructions, or scheduling requests to the Appeals Tribunal by telephone or fax to insure the information is received prior to the scheduling of the hearing.   Information submitted in writing must include the claimant's Social Security Number.   DO NOT CONTACT THE CAREER CENTER as they do not have the information to assist you.

ADDRESS FOR APPEALS SECTION:          Georgia Department of Labor
                                      Suite 201, 1630 Phoenix Blvd.
                                      College Park, GA  30349
                                      Phone - (770) 909-2828
                                      FAX - (770) 909-2884

DOL-423A Completed By  KRYSTAL-CHANTEL JONES Title  DOL SERVICES SPEC.

DOL-423B mailed/hand delivered:            Clt  09-16-10   Emp 09-16-10

DOL-424B/DOL-451 mailed/hand delivered:    Clt  09-16-10   Emp 09-16-10

Name _Justin Laster_   Employer _The Krystal Company_

SSN _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_

## CLAIMANT'S INFORMATION ON DISCHARGE

1. Give the name and title of the person who told you that you were discharged.
   _Steve Brown, District Supervisor_

2. On what date were you told you were discharged? _8/2/10_

3. What did your employer say you did that caused your discharge? Write down what you were told, even if you disagree with it. Give details. _Violated Company Policy / Sexual Harassment_
   _I was terminated for allegedly sexually harassing_
   _a female employee. See attached Document_

   What dates did your employer say the above problems happened? _July 14, 2010_

   If you do not think the above reason was why you were discharged, give the reason you feel you were discharged. Be detailed. If you need more room, write on the back of this page. _____

   _____

4. Did your employer tell you that you were being discharged because you violated a rule, policy or order? (Y)   N
   If yes, what was the exact rule, policy or order? Explain in detail.
   _Company Policy Sexual Harassment_

   Did you know about the rule, policy or order? (Y)   N _____
   If yes, when were you told about it?

5. Did your employer tell you that you were being discharged because you violated the same rule, order or policy more than once? Y _____ (N)   If yes, on what dates did your employer say these violations occurred? _____

6. Were you warned before you were discharged?   Y _____ (N)

   If yes, when were you warned? _____

   What were you warned about? _____

   Did you know you might lose your job?   Y _____ (N)

   What did you do to keep from being discharged after you were warned? _____

7. Were you discharged due to being absent or late to work?   Y _____ (N)   If yes, give the dates and reasons for each time you were absent or late. _____

8.  Did your employer tell you, prior to any of your absences, that you could be denied unemployment benefits for violation of the policy on attendance? Y____ N____

    a.  When were you told this? _1/4/10_____

    b.  How were you told? _Verbally + Company Handbook_____

9.  Give any other facts about your discharge you want considered. _____

10. If you have received, or will receive, any type of payment (severance pay, separation pay, wages in lieu of notice, etc.) related to your separation, answer the following questions. DO NOT INCLUDE VACATION PAY.

    Date received or will receive _____ Amount of the payment _____

    What period of time is this payment for?   from _____ to _____

Additional information may be furnished below.

I certify that the information furnished is true and correct. I understand that the law provides penalties for any person who knowingly makes false statements or withholds information to obtain or increase benefits.

_8/11/10_____
DATE

_____
SIGNATURE



State of Georgia
Department of Labor

## SEPARATION NOTICE

1. Employee's Name  Justin Caster                        2. S. S. No.

   a. State any other name(s) under which employee worked.

3. Period of Last Employment: From  Jan 04 2010  To  8·6·10

4. REASON FOR SEPARATION:

   a. LACK OF WORK [ ]

   b. If for other than lack of work, state fully and clearly the circumstances of the separation:
   Violation of company policy... Sexual Harrasment,
   inappriate behavior at work.

5. Employee received payment for: (Severance Pay, Separation Pay, Wages-In-Lieu of Notice, bonus, profit sharing, etc.)
   (DO NOT include vacation pay or earned wages)

   _____  in the amount of $ _____  for period from _____  to _____
   (type of payment)

   Date above payment(s) was/will be issued to employee _____

   IF EMPLOYEE RETIRED, furnish amount of retirement pay and what percentage of contributions were paid by the employer.
   _____ per month  _____ % of contributions paid by employer

6. Did this employee earn at least $3,500.00 in your employ?  YES [✓]  NO [ ]  If NO, how much? $ _____
                                                                          Average Weekly Wage _____

Employer's
Name  Krystals

Address  1605 N. Slappey
                    (Street or RFD)

City  Albany          State  GA   ZIP Code  3170?

Employer's
Telephone No.  (229) 439-2650
                (Area Code)      (Number)

6a. Ga. D. O. L. Account Number  ___·162 03
(Number shown on Employer's Quarterly Tax and Wage
Report, Form DOL 4.)

I CERTIFY that the above worker has been separated from work
and the information furnished hereon is true and correct. This

report has been handed to or mailed to the worker.

_____
Signature of Official, Employee of the Employer
or Authorized agent for the employer

General Manager
Title of Person Signing

8·6·10   8/9/10
Date Completed and Released to Employee

### NOTICE TO EMPLOYER

At the time of separation, you are required by the Employment
Security Law, OCGA Section 34-8-190(c), to provide the
employee with this document, properly executed, giving the
reasons for separation. If you subsequently receive a request
for the same information on a DOL-1199FF, you may attach a
copy of this form (DOL-800) as a part of your response.

### NOTICE TO EMPLOYEE

OCGA SECTION 34-8-190(c) OF THE EMPLOYMENT SECURITY LAW REQUIRES THAT YOU TAKE
THIS NOTICE TO THE GEORGIA DEPARTMENT OF LABOR FIELD SERVICE OFFICE IF YOU FILE A
CLAIM FOR UNEMPLOYMENT INSURANCE BENEFITS.

SEE REVERSE SIDE FOR ADDITIONAL INFORMATION.

DOL-800 (R-8/02)

Justin Laster
Production Manager
The Krystal Company
1605 N. Slappey Albany, GA
Unemployment Insurance

I was terminated on August 2nd, 2010 allegedly because I sexually harassed a female employee at work. On numerous days and nights that I worked at The Krystal Company I dealt with female employees coming to me and telling me that male customers were sexually harassing them, making slurs at them that they wanted to either talk to them or have sex with them because of the too tight or fitted pants that reveal too much at work. The female employees followed the Company Policy of wearing the appropriate type of pants, Khakis, but The Krystal Company did not further protect the Managers or employees for how tight or loose their pants should fit employees that they not be exposed to sexual harassment from customers or anyone. On April 17, April, 25, May 3, May 14, May 15, May 17, June 4, June 7, June 10, June 16, June 18, June 28, July 2, July 6, July 8, July 12, July 20, and July 23 were the days and nights I dealt with this issue of female employees being sexually harassed by male customers and the next day I told my supervisors and nothing was done about it. On July 14, 2010 I was working at Krystals and I noticed something that I knew if not attended to, it would cause further problems, so I called the female employee on her phone after she left Krystals because when I came in for my shift at 10:00p.m. that night I come in to a busy period of customers in the restaurant, so when I was able to get some time away from the floor, I called the female employee and asked her about what I noticed would cause her to be sexually harassed if my suspicions were true, so I asked her were she wearing undergarments under her clothes because she looked as if she did not and I knew if a male customer would have seen this discrepancy as I have, they were going to sexually harass her because of how tight her pants were and you could see right through them of what she did or did not have on underneath at the time. On numerous dates, this female employee Tianna and other female employees such as Latonya, Whitney, and Antanita told me that male customers because they were female were sexually harassing them saying sexual slurs to them and wanted it to stop. I on numerous dates told my supervisors and documented talking to my supervisors about the incidents, but nothing was ever done to solve the problem. I tried to get my District Supervisor's boss number, but he would not give me the number until after several times of getting firm with him to give it to me concerning this issue and other issues that I was having at the Krystals Restaurant. When I explained my side of the story to my supervisors, I was suspended on August 3rd, 2010 until the investigation into the matter was solved, and on August 2nd, 2010, I was terminated for Violating Company Policy and allegedly Sexual Harassing a female employee. I did everything I knew in my professional and managerial status to solve the problem myself when I got no solution to the problem before the incident ever occurred. I was only protecting myself and my shift at night that I worked because I got tired of the female

employees complaining to me that male customers were sexually harassing them making sexual gestures and slurs at them.

Justin Laster
8/11/10

FOCUS™ Terms                                           | Search Within  Original Results (1 - 1)        Go →
Advanced...

View: TOC | Full | Custom                    ⇦ 1 of 1 ⇨
                                              Book Browse
                                   O.C.G.A. § 51-5-1  (Copy w/ Cite)                        Pages: 1

*O.C.G.A. § 51-5-1*

GEORGIA CODE
Copyright 2009 by The State of Georgia
All rights reserved.

*** Current through the 2009 Regular Session ***

TITLE 51.  TORTS
CHAPTER 5.  LIBEL AND SLANDER

O.C.G.A. § 51-5-1  (2009)

§ 51-5-1.  Libel defined; publication prerequisite to recovery

   (a) A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule.

(b) The publication of the libelous matter is essential to recovery.

**HISTORY:** Orig. Code 1863, § 2916; Code 1868, § 2923; Code 1873, § 2974; Code 1882, § 2974; Civil Code 1895, § 3832; Civil Code 1910, § 4428; Code 1933, § 105-701.


View: TOC | Full | Custom                    ⇦ 1 of 1 ⇨
                                              Book Browse
                                   O.C.G.A. § 51-5-1  (Copy w/ Cite)                        Pages: 1

 LexisNexis®    About LexisNexis | Terms & Conditions  | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# About.com: Tech Careers

From John Steven Niznik, former About.com Guide

## Wrongful Termination
### Justifiably Claiming Wrongful Termination

There is no wrongful termination law per se, but rather a variety of state and Federal laws with provisions that protect employees from it. Under such laws, wrongful termination might apply if your employer fired or laid you off, or forced you to quit or retire. Below are just a few examples of reasons to justifiably claim wrongful termination.

### Discrimination

Employers can't legally terminate you solely on the basis of gender, race, creed, disability and a variety of other discriminatory reasons. But if a discrimination isn't specifically covered by a law, you are not generally protected from that type of discrimination.

For example, if your boss fires you simply because he or she doesn't like you on a personal level, good cause[21] or not aside, that's not discrimination by law. But, if you can prove that he or she doesn't like you for one of the reasons protected by law[22], and furthermore, that's why he or she fired you, then it's discrimination and you likely have a winnable case.

### Retaliation

Employers can't rightfully terminate you for reporting their illegal actions to the proper authorities (commonly called whistle blowing[23]). They also can't axe you in retaliation for something you legally did or they illegally did, or because you refused to do something that was contrary to public policy[24] and sound morality, such as breaking the law.

For example, if your boss fires you because you filed a legit worker's compensation claim[25] or didn't yield to his or her sexual advances[26], you probably have a good shot at winning a lawsuit.

### Defamation of Character

You might be able to sue for wrongful termination if your employer intentionally defamed[27] you to justify terminating you.

**More of this Feature**
- What Constitutes Wrongful Termination?[1]
- Justifiably Claiming Wrongful Termination
- Seeking Relief for Wrongful Termination[2]

**Related Resources**
- About [3]Non-Compete Agreements[4]
- About Employment Separation (Severance) Agreements[5]
- Am I Entitled to Severance Pay?[6]
- Collecting Unemployment Insurance[7]
- Drug Testing in the Workplace[8]
- Employment-Related Defamation[9]
- Quit your Job[10]
- Research Labor Laws[11]
- What can my ex-employer say about me?[12]
- What's Constructive Discharge?[13]
- What's Employment at Will?[14]
- What's Employment Discrimination?[15]
- What's in a Severance Package?[16]

**Elsewhere on the Web**
- Model Employment Termination Act Summary[17]
- What's good cause for firing?[18]
- When is firing discriminatory?[19]
- Wrongful Termination[20]

Wrongful Termination - Justifiably Claiming Wrongful Termination

For example, if your employer falsely accuses you of stealing as an excuse to fire you, you might have a case for wrongful termination in violation of public policy.

## Breach[28] of Explicit or Implied Contract[29]

If you work on contract for a specified period and are satisfying the terms, employers typically can't terminate your contract without good cause before the specified period ends. (Union workers, athletes, actors, upper management, independent contractors[30] and such, usually work on contract.) But if your contract includes an "escape clause" indicating that either party may end the relationship without consequence, that's likely good cause enough without further explanation.

In the absence of explicit contracts, some states might consider employers' policy manuals, employee handbooks, employee agreements and similar documents as binding, implied or "implied -in-fact" contracts of continued employment, depending on how they're worded. But that's usually if employers don't explicitly document the terms of employment at will[31] and good cause for termination.

According to the landmark, 1988 decision in the *Foley vs. Interactive Data Corp.* case in California, states might also consider an employee's chain of promotions, raises, great merit reviews, and verbal assurances of job security as an implied-in-fact contract. But not all state courts acknowledge the so-called Foley criteria to the letter, and remember that employment agreement[32] you signed way back when you were hired? You might have let your employer off the hook, if it included an acknowledgement that such things do not constitute a contract or guarantee of continued employment.

### Breach of Good Faith and Fair Dealing

"Good faith and fair dealing" is an implied covenant that employees deserve to be treated fairly by their employers, especially dedicated, long-term employees.

Examples of an employer's breach of this covenant include firing employees to avoid granting the rewards they've earned and manufacturing reasons to fire employees. But not all states recognize breach of this covenant as a wrongful-termination exception to the Employment at Will Doctrine.

### Constructive Discharge

If you quit because your employer instituted or allowed a change that made working conditions intolerable, and if any reasonable employee would have quit too under the same circumstances, you might have a case for constructive discharge[33], a form of wrongful termination.

In other words, your employer might have, in effect, wrongfully terminated you by making or allowing a change that forced you to quit, according to the legal concept of constructive discharge. However, constructive discharge is not easy to prove.

**Harassment and Employee Rights**

Over the past several years, sexual harassment has become a subject of considerable discussion. Previous generations of business owners and managers rarely had to address the issue. Business historians and social observers point to several possible factors for this. Some note that women used to comprise a much smaller component of the workforce, and that various societal pressures may have made them less likely to come forward with complaints. Others point out that many of the legal protections that are now in place against harassment have only developed over the last 30 years. Still other observers contend that the rise in sexual harassment claims simply reflects a general decline in civility in American society. Whatever the reasons, sexual harassment complaints have risen steadily in recent years. In fact, the EEOC reported that from 1990 to 1994, the number of sexual harassment cases that were filed in the United States more than doubled. "Because an agency complaint is a prerequisite to suit under federal and many state laws, these numbers forecast a corresponding increase in sexual harassment lawsuits in the coming years," wrote Egler. "When it is considered that many more potentially explosive situations are quietly resolved (some at substantial cost) before reaching the complaint stage, it is readily apparent that sexual harassment is a risk that requires proactive management."

But small business owners and corporate executives alike need to make sure that in their zeal to protect the legitimate rights of employees not to be harassed in the workplace, they do not trample on the rights of those accused of misbehavior. "While sexual harassment is clearly a pervasive reality, every case needs to be reviewed on its own merit," said Wagner. "Just because harassment is a significant social and corporate problem does not mean it has in fact occurred in a particular instance." Indeed, an employee who is punished or dismissed on the basis of a frivolous sexual harassment claim has the same recourse to the law as the victim of sexual harassment who is left unprotected by indifferent managers/owners. Business owners and managers thus need to consider the rights of all parties involved when investigating sexual harassment complaints.

US Supreme Court
## Sexual Harassment

Top
Home > Library > Law & Legal Issues > US Supreme Court

The statutory basis for the prohibition against sexual harassment is Title VII, which prohibits employers from hiring, firing, or otherwise discriminating in terms and conditions of employment on the basis of an individual's race, color, religion, sex, or national origin. Sexual harassment claims are divided into two categories: quid pro quo and hostile workplace environment. Quid pro quo harassment occurs when an employer or supervisor takes tangible employment action against an employee because of the employee's unwillingness to provide sexual favors. The more controversial hostile workplace environment claims were initially recognized by the Supreme Court in *Meritor Savings Bank, SFB v. Vinson* (1986). In that case, the Supreme Court interpreted an Equal Employment Opportunity Commission (EEOC) regulation, 29 CFR 1604.11(a) (1985), which defined sexual harassment as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." The court ruled that to be actionable, the harassment must be severe enough to alter the employee's conditions of employment, creating what has become known as a "hostile environment."

Subsequently, in *Teresa Harris v. Forklift Systems, Inc.* (1994), the Court clarified the previous ruling by explaining that the existence of a hostile environment can be determined "only by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" (p. 369).

One issue that initially caused confusion was whether an employer could be held liable for sexual harassment by a supervisor when the employee suffered no tangible economic loss. In companion decisions in *Ellerth v. Burlington* and *Faragher v. City of Boca Raton* (1998), the high court ruled that an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. However, when no tangible employment action is taken, a defending employer may raise an affirmative defense to liability by showing that (a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action.

One final controversial matter the Supreme Court had to resolve was whether one could sexually harass someone of the same sex. Initially, same-sex harassment was *not* considered sexual harassment, but, in the case of *Joseph Oncale v. Sundowner Offshore Service* (1998), the Supreme Court broadened the interpretation of the law and held that nothing in the act bars a cause simply because the plaintiff and defendant are members of the same sex. The critical issue, Justice Antonin Scalia wrote, was "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed" (p. 78).

— *Nancy K. Kubasek*

Download our official FREE toolbar

TEXT

○ TheFreeDictionary   ○ Google   ○ Bing          New: Language forums

sexual harassment                                    [ Search ]   ?

2,235,194,827 visitors served.   ○ Word / Article   ○ Starts with   ○ Ends with   ○ Text

| Dictionary/ thesaurus | Medical dictionary | Legal dictionary | Financial dictionary | Acronyms | Idioms | Encyclopedia | Wikipedia encyclopedia | ? |

## sexual harassment   Also found in: Dictionary/thesaurus, Medical, Acronyms, Encyclopedia, Wikipedia, Hutchinson        0.01 sec.

Sponsored links

**Ask a Lawyer: Harassment**
27 Lawyers are Online! Ask a Question, Get an Answer ASAP.
Law.JustAnswer.com/Harassment

**Present Your Case - Free**
Legal Consultations for Harassment Get Help From a Georgia Lawyer
www.PresentYourCase.com

**Find Employment Lawyers**
Present Your Case - Free. Lawyers Respond. Fast & 100% Secure.
www.LegalMatch.com

**Sexual Harassment**
Move your career forward with an accredited online degree!
www.CourseAdvisor.com

**sexual harassment**
$19.99 Download Template Now Professional & Quality Template
www.DigitalWorkTools.com

*Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that tends to create a hostile or offensive work environment.*

Sexual harassment is a form of Sex Discrimination that occurs in the workplace. Persons who are the victims of sexual harassment may sue under Title VII of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000e et seq.), which prohibits sex discrimination in the workplace.

The federal courts did not recognize sexual harassment as a form of sex discrimination until the 1970s, because the problem originally was perceived as isolated incidents of flirtation in the workplace. Employers are now aware that they can be sued by the victims of workplace sexual harassment. The accusations of sexual harassment made by ANITA F. HILL against Supreme Court Justice Clarence Thomas during his 1991 confirmation hearings also raised societal consciousness about this issue.

Courts and employers generally use the definition of sexual harassment contained in the guidelines of the U.S. Equal Employment Opportunity Commission (EEOC). This language has also formed the basis for most state laws prohibiting sexual harassment. The guidelines state:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when

1. submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment,
2. submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individuals, or
3. such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. (29 C.F.R. § 1604.11 [1980])

A key part of the definition is the use of the word *unwelcome*. Unwelcome or uninvited conduct or communication of a sexual nature is prohibited; welcome or invited actions or words are not unlawful. Sexual or romantic interaction between consenting people at work may be offensive to observers or may violate company policy, but it is not sexual harassment.

The courts have generally concluded that a victim need not say or do a particular thing to indicate unwelcomeness. Instead, a court will review all of the circumstances to determine whether it was reasonably clear to the harasser that the conduct was unwelcome. The courts have recognized that victims may be afraid to express their discomfort if the harasser is their boss or is physically intimidating. Victims may be coerced into going along with sexual talk or activities because they believe they will be punished or fired if they protest. Consent can be given to a relationship and then withdrawn when the relationship ends. Once it is withdrawn, continued romantic or sexual words or actions are not protected by the past relationship and may be sexual harassment.

The law prohibits unwelcome "sexual" conduct and words or actions "of a sexual nature." Some conduct, such as hugging, may be sexual or nonsexual and must be evaluated in context. Sexual harassment may be physical, such as kissing, hugging, pinching, patting, grabbing, blocking the victim's path, leering or staring, or standing very close to the victim. It may also be verbal, which may be oral or written and could include requests

## Same-Sex Sexual Harassment

Sexual harassment in the workplace is usually associated with a heterosexual employee making unwelcome sexual advances to another heterosexual employee of the opposite gender. There are also cases where a homosexual employee harasses an employee of the same sex. But can a heterosexual

Page tools

Printer friendly        Feedback
Cite / link            Add definition
Email

Sponsored links
**Workplace Diversity Board**
Workplace diversity community – news, articles, events & discussion
http://www.diversityjobs.com

**About Sexual Harassment**
Looking for About Sexual Harassment? Find It Locally.
purelocal.com/about-sexual

**Sexual Harassment**
Millions of Products from Thousands of Stores All in One Place.
www.shopping.com

**Sexual Harassment**
Get the best prices on everything from thousands of trusted retailers.
www.dealtime.com

**Sexual Harassment**
Ask Sexual Harassment Questions for free to experts - fast answers.
WebAnswers.com



**Waterloo Mom Discovers $5 Wrinkle Trick**
Dermatologists DON'T want you knowing about this Skin Care Secret!

**DON'T Pay For White Teeth**
Waterloo Mom discovers one simple trick to turn yellow teeth white for under $4



**Waterloo Mom Makes $77/hr Online!**
Unemployed Mom Makes $6,795/Month Working Online! Read How She Did It.

Advertisement (Bad banner? Please let us know)

Related Ads
• sexual abuse          • Molestation Case
• Molestation           • Molestation Help
• Molestation Court     • Molestation Child
• Molestation Free      • MJ Molestation
• Molestation Old       • Can I Molestation

My Word List                        ?
Add current page to the list

Case 1:11-cv-00081-WLS Document 1-2 Filed 06/15/11 Page 24 of 33

employee sexually harass another heterosexual employee of the same gender?

The Supreme Judicial Court of Massachusetts, in Melnychenko v. 84 Lumber Company, 424 Mass. 285, 676 N.E.2d 45 (1997), concluded that same-sex sexual harassment is prohibited under state law regardless of the sexual orientation of the parties.

Leonid Melnychenko and two other employees at a Massachusetts lumberyard were subjected to humiliating verbal and physical conduct by Richard Raab and two other employees. Raab loudly demanded sexual favors from the men, exposed himself, and simulated sexual acts. Eventually the three employees quit their jobs with the lumber company and sued, claiming that sexual harassment was the reason for their departure.

At trial, the judge concluded that Raab's actions were not "true romantic overtures to the plaintiffs, and that they were not inspired by lust or sexual desire." Raab, who was "physically violent and sadistic," sought to "degrade and humiliate" the men.

The trial judge and the Supreme Judicial Court agreed that Raab's behavior constituted sexual harassment because it interfered with the three plaintiffs' work performance by creating an intimidating, hostile, humiliating, and sexually offensive work environment. Raab's sexual orientation did not excuse the conduct. The unwelcome sexual advances and requests for sexual favors were more than lewd horseplay and raunchy talk. They constituted sexual harassment.

In a subsequent case involving charges of same-sex sexual harassment, the Supreme Court held in Oncale v. Sundowner Offshore Services, Inc., et al., 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (U.S. 1998), that Title VII prohibits sexual harassment even when the harasser and target of harassment are of the same sex. Joseph Oncale worked for Sundowner Offshore Services on an oil platform in the Gulf of Mexico from August to November 1991. Oncale's supervisor and two co-workers forcibly subjected Oncale to humiliating sex-related actions in the presence of the rest of the crew. Oncale had even been threatened with rape. Oncale complained to other supervisors, but no remedial action was taken. Oncale eventually quit, requesting that Sundowner indicate that he voluntarily left due to sexual harassment and verbal abuse. He subsequently filed a Title VII action in the U.S. District Court for the Eastern District of Louisiana.

The Fifth Circuit ruled against Oncale, stating that the Title VII prohibition against sexual harassment does not include same-sex sexual harassment, even harassment as blatant as Oncale's supervisor exposing his penis and placing it on Oncale's body, and also, along with two co-workers, attacking Oncale in a shower and forcing a bar of soap into his anus while threatening rape. Justice Scalia wrote the opinion for a unanimous court that reversed the lower court. In a strongly worded opinion, he complained of the lack of common sense demonstrated by the lower courts that had hitherto excluded same-sex claims, and also those that had conditioned liability on a same-sex sexual harasser being gay or lesbian.

## Further readings

Black, Jessica. 1997. "Same-Sex Harassment—Employment Discrimination—Civil Rights." Massachusetts Law Review 82 (fall).

Pierce, Karla J. 2003. "Title VII and Same-Sex Sexual Harassment After Oncale—Uncertainty Lingers." Colorado Lawyer 32 (June).

Weizer, Paul I. 2002. Sexual Harassment: Cases, Case Studies, & Commentary. New York: P. Lang.

## Cross-references

Assault; Civil Rights Acts; Sex Offenses.

or demands for dates or sex, sexual jokes, comments about the victim's body or clothing, whistles, catcalls, or comments or questions about the victim's or harasser's social life or sexual life. Sexual harassment may also be visual, such as cartoons, pictures, or objects of a sexual nature.

The laws against sexual harassment are violated when "submission to such conduct is made either explicitly or implicitly a term or condition of...employment." This language refers to what is sometimes called quid pro quo sexual harassment, in which a victim's hire, job security, pay, receipt of benefits, or status depends on her or his response to a superior's sexual overtures, comments, or actions. The quid pro quo may be direct, as when a superior explicitly demands sexual favors and threatens firing if the demands are not met, or it may be indirect, as when a superior suggests that employment success depends on "personality" or "friendship" rather than competence.

Sexual harassment also occurs when sexual conduct or communication "unreasonably interfer[es] with an individual's work performance." Tangible loss of pay, benefits, or the job itself is not required for sexual harassment to be claimed and proven. Generally, occurrences must be significant or repeated or both for substantial interference to be established.

## CLARENCE THOMAS AND ANITA HILL HEARINGS

The issue of sexual harassment drew national attention during the 1991 Senate hearings on the confirmation of Clarence Thomas to the U.S. Supreme Court. Anita Faye Hill, a professor at the University of Oklahoma Law Center, accused Thomas of sexually harassing her when she worked for him at the U.S. Department of Education and the Equal Employment Opportunity Commission (EEOC) between 1981 and 1983. The public disclosure of the allegations resulted in nationally televised hearings before the Senate Judiciary Committee.

The hearings, which drew a large national viewing audience, raised questions about Thomas's behavior, Hill's credibility, and the nature of sexual harassment in the workplace. The demeanor of the 12 white



1 Trick of a tiny belly :

Cut down a bit of your belly every day by using this 1 weird old tip. ▶ Tip

Advertisement (Bad banner? Please let us know)

Charity

Feed a hungry child - donate to school feeding program



Starting Around $16k

Advertisement (Bad banner? Please let us know)

male members of the Senate Judiciary Committee and the questions they asked Hill raised the ire of many women's groups, who saw in the senators' behavior an unwillingness to acknowledge the dynamics of sexual harassment.

Thomas, then a judge on the U.S. Court of Appeals for the District of Columbia, had been nominated by President GEORGE H. W. BUSH to fill the seat vacated by Justice Thurgood Marshall. Thomas's opponents, including many Democrats and interest groups, tried to block his nomination because they did not want Thomas, an outspoken conservative African American, replacing Marshall, an African American and one of the few remaining liberals on the Court. After questioning Thomas at length, the Judiciary Committee deadlocked 7–7 on whether to recommend the nominee to the full Senate and then sent the nomination to the floor without a recommendation. Nevertheless, it appeared that Thomas would win confirmation by a comfortable, though not necessarily large, margin.

Then on October 6, 1991, Anita Hill publicly accused Thomas of sexual harassment. The charges rocked the Senate. Hill had been contacted earlier by Senate staff members, and she told them of her allegations. The Judiciary Committee asked the Federal Bureau of Investigation (FBI) to talk to Hill and Thomas about the allegations. The FBI produced a report that was inconclusive, being largely a matter of "he said, she said." The allegations would probably never have come to public attention except that Hill's statement was leaked to National Public Radio (NPR). Once NPR broke the story, Thomas's confirmation was thrown into doubt. In response, the Judiciary Committee announced that Thomas and Hill would be given a chance to testify before the committee.

The Hill-Thomas hearings took place the weekend of October 11th. Hill testified that after she had refused to date Thomas, he had initiated a number of sexually oriented conversations, some of which alluded to pornographic films. She provided vivid details about these conversations, but her credibility was questioned by Thomas supporters who suggested, among other things, that Hill might have fantasized the conversations. Senator Arlen Specter (R-Pa.) interrogated Hill as if she were a criminal suspect and suggested that she might be charged with perjury. Other senators wondered why she had followed Thomas from the Education Department to the EEOC if he had sexually harassed her. She replied that the harassment seemingly had ended and that she was uncertain about the future of her job at Education.

Thomas forcefully denied all of Hill's allegations and portrayed himself as the victim of a racist attack. According to him, Hill's allegations were "charges that play into racist, bigoted stereotypes." He reminded the committee that historically, when African American men were lynched, they were almost always accused of sexual misconduct, and he characterized the hearings as a "high-tech lynching."

Thomas's impassioned defense proved to be effective. It not only disarmed his Democratic opponents on the committee, who in the opinion of many commentators failed to question Thomas effectively, but it also won him sympathy throughout the country. A New York Times/CBS News poll taken October 28, 1991, found that 58 percent of the respondents believed Thomas; only 24 percent believed Hill.

The committee also heard from witnesses who said that Hill had discussed the harassment with them during the time she worked for Thomas. Thomas's supporters produced several men as character references, one of whom alleged that Hill's statements were a product of romantic fantasy. Several women who would have testified that Thomas exhibited similar behavior with them either declined to testify after seeing the committee's grilling of Hill or were not called by the committee.

Thomas was confirmed two days after the hearings, on a vote of 52–48, the narrowest margin for a Supreme Court justice since 1888.

Thomas's confirmation did not end the controversy. Some commentators characterized the hearings as a perversion of the process and suggested that Hill's charges should have been aired in closed committee hearings. Others criticized Hill as a pawn of liberal and feminist interest groups that sought to derail Thomas's nomination by any means. Some critics also accused Hill of being an active participant in the move to defeat Thomas; they claimed that she was a Democrat who pretended to be a Republican so as to appear politically impartial.

Hill's defenders were outraged by the committee's treatment of her. They described her plight as typical of women who bring sexual harassment claims. Unless the woman has third-party testimony backing up her charges, the "he said, she said" scenario always favors the man. The senators' questioning of Hill's motivations was also evidence of how men fail to understand sexual harassment. Many of the senators saw her as either a liar, a publicity seeker, or an emotionally disturbed woman who fantasized the alleged incidents. In response, T-shirts appeared that stated "I believe Anita Hill." There was also concern that Hill's treatment might discourage women from reporting sexual harassment. The Thomas-Hill hearings were a watershed event in the discussion of sexual harassment.

## Further readings

Morrison, Toni, ed. 1992. Race-ing Justice, Engendering Power: Essays on Anita Hill, Clarence Thomas, and the Construction of Social Reality. New York: Pantheon.

Ragan, Sandra L., et al, eds. 1996. The Lynching of Language: Gender, Politics, and Power in the Hill-Thomas Hearings. Urbana: Univ. of Illinois Press.

Siegel, Paul, ed. 1996. Outsiders Looking In: A Communication Perspective on the Hill/Thomas Hearings. Cresskill, N.J.: Hampton Press.

Smitherman, Geneva, ed. 1995. African American Women Speak Out on Anita Hill-Clarence Thomas. Detroit: Wayne State Univ. Press.

Unreasonable interference can occur between coworkers of equal status as well as between superiors and subordinates. The employer of the coworker may be legally liable for such harassment if the employer knows or should know about it and fails to take timely and appropriate responsive action.

The sexual harassment lawsuit filed in 1994 by Paula Jones against President BILL CLINTON highlighted this workplace issue. In 1991 Jones was an employee of the Arkansas Industrial Development Commission and Clinton was governor of Arkansas. Jones claimed that while working at an official conference at a Little Rock hotel, she was persuaded by a member of the Arkansas state police to visit the governor in a business suite at the hotel. She alleged that Clinton made sexual advances that she rejected. Jones also claimed that because she rejected his advances, her superiors dealt with her in a rude and hostile manner and changed her job duties.

Clinton denied the charges and sought to delay the lawsuit until after he left the presidency. The Supreme Court rejected this argument in Clinton v. Jones, 520 U.S. 681, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997), and he was forced to defend himself. In 1998 the federal district court dismissed her action, ruling that there was no proof that Jones was emotionally injured or punished in the workplace for rejecting Clinton's advances. Jones appealed this ruling but agreed to drop her lawsuit in return for $850,000. She also dropped her previous demand that Clinton apologize or make an admission of guilt.

The most far-reaching part of the EEOC definition is that dealing with a hostile or offensive working environment. The U.S. Supreme Court upheld the concept of a hostile work environment as actionable under the 1984 Civil Rights Act in Meritor Savings Bank v. Vinson, 477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 49 (1986). The Court rejected a narrow reading of the statute, under which an employer could not be held liable for sexual harassment unless the employee's salary and promotions were affected by the actions.

In the Vinson case, plaintiff Michelle Vinson, an employee of Meritor Savings Bank, claimed that her male supervisor, Sidney Taylor, had sexually harassed her. Taylor made repeated demands for sexual favors, and the pair engaged in sexual relations because she feared losing her job if she refused. The harassment stopped after Vinson began a steady relationship with a boyfriend. One year later, Taylor fired Vinson for excessive use of medical leave. Although the bank had a procedure for reporting harassment, Vinson had not used it because it required her to report the alleged offenses to her supervisor—Taylor.

Justice WILLIAM H. REHNQUIST, writing for the Court, established several basic principles for analyzing hostile environment cases. First, for sexual harassment to be actionable, it must be severe enough to change the conditions of the victim's employment and create an abusive working environment. Here, Rehnquist implied that isolated occurrences of harassment (such as the telling of a dirty joke or the display of a sexually explicit photograph) would not constitute a hostile work environment.

Second, Rehnquist made clear that there is a difference between voluntary behavior and welcome behavior. Noting that Vinson and Taylor's sexual relations were voluntary, Rehnquist rejected the conclusion that Vinson's willingness constituted a defense to sexual harassment. The critical issue was whether the sexual advances were welcome. If sexual advances are unwelcome, the inequality of power between a supervisor and subordinate strongly suggests that the employee engages in sexual relations out of fear.

Third, Rehnquist held that courts must view the totality of the circumstances when deciding the issue of welcomeness. In Vinson, however, the Court did not address the question of whose perspective should be used in determining whether certain behavior so substantially changes the work environment that it becomes abusive: should the standard be that of a reasonable man, a Reasonable Woman, or a reasonable person?

In Robinson v. Jacksonville Shipyards, 760 F. Supp. 1486 (M.D. Fla. 1991), federal district judge Howell Melton applied the reasonable woman test to determine if the work environment was abusive to women. He held that a reasonable woman exposed to the pictures of nude or partially nude women that were posted in the workplace and to the sexually demeaning remarks and jokes by male workers would find that the work environment at the shipyards was abusive. The totality of the circumstances would lead a reasonable woman to these conclusions.

The Ninth Circuit Court of Appeals echoed this reasoning in Ellison v. Brady, 924 F.2d 872 (1991). In Ellison, the court rejected the reasonable person standard in favor of the reasonable woman standard. The court believed that using the reasonable person standard would risk enforcing the prevailing level of discrimination because that standard would be male biased.

Even with the acceptance of the reasonable woman standard by the courts, the diversity of outcomes in harassment claims created confusion as to what constitutes harassment. In Harris v. Forklift Systems, 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 295 (1993), the Supreme Court attempted to clarify this issue. Teresa Harris had filed a discrimination claim based on the behavior of the company president, Charles Hardy. Hardy had insulted Harris and other women with demeaning references to their gender and with unwanted sexual innuendo.

The district court ruled that although Hardy's comments were sufficiently offensive to cause discomfort for a reasonable woman, they did not rise to the level of interfering with that woman's work performance. The court also held that Harris had not been injured by the comments.

The Supreme Court overruled the lower court, holding that courts must not focus their inquiry on concrete psychological harm, which is not required by Title VII of the Civil Rights Act. To maintain such a requirement would force employees to submit to discriminatory behavior until they were completely broken by it. So long as the workplace environment would reasonably be perceived as hostile or abusive, it did not need also to be psychologically injurious.

Thus, the plaintiff in a hostile work environment case must show that sexually harassing behavior is more than occasional, but need not document an abusive environment that causes actual psychological injury. The courts recognize that a hostile work environment will detract from employees' job performance, discourage employees from remaining in their positions, and keep employees from advancing in their careers. The Title VII guiding rule of workplace equality requires that employers prevent a hostile work environment.

In Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the

Supreme Court sought to clarify the confusing state of sexual harassment law. It held that an employee could sue for damages for sexual harassment under Title VII even if the employee did not suffer any adverse job consequences, such as demotion or termination. The Court stated that under Title VII, an employee who refuses "unwelcome and threatening sexual advances of supervisor, yet suffers no adverse, tangible job consequences" may recover damages from an employer. The employee does not have to show that the employer was negligent or at fault for the supervisor's actions to recover damages. The Court based its new standard on principles of agency law. Agency law describes the responsibilities of employers and employees to each other and to third parties. The Court invoked the agency principle that makes employers liable for the torts of employees who act or speak on behalf of the employer and whose apparent authority the victimized employee relies upon.

The Court, however, also provided employers with more protection in *Ellerth*. If a supervisor has harassed an employee, but no tangible employment action is taken against the employee, the employer may present an Affirmative Defense. This defense includes a showing that the employer exercised reasonable care to prevent and correct sexually harassing behavior. A company's policy against sexual harassment would be relevant to demonstrate reasonable care. The defense also allows the employer to show that the employee had unreasonably failed to take advantage of the employer's anti-harassment procedures.

*Ellerth* gave employers an additional incentive to institute policies against sexual harassment. A first step is determining if a problem exists. Some companies conduct informal surveys of their employees concerning sexual harassment. In addition, employers often inspect the workplace for objectionable material, such as photographs of nude people or insensitive or explicit jokes with sexual connotations.

Employers typically include a policy against sexual harassment in personnel policies or employee handbooks. These policies use the EEOC definition of prohibited conduct as a guideline. The prohibited conduct must be stated in an understandable way.

A complaint procedure is typically part of the policy. Most employers recognize that a prompt and thorough investigation of a complaint, followed by appropriate disciplinary action, can minimize liability. These procedures usually specify to whom a victim of harassment can complain if the victim's supervisor is the alleged harasser. Companies also routinely train supervisors to recognize sexual harassment. Finally, some employers provide sexual harassment training for all their employees as a way of trying to improve workplace culture and behavior, as well as minimizing their legal liability.

### Further readings

Bingham, Clara and Laura Loedy Gansler. 2002. *Class Action: The Story of Lois Jenson and the Landmark Case That Changed Sexual Harassment Law.* Garden City, N.J.: Doubleday.

Crouch, Margaret A. 2001. *Thinking About Sexual Harassment: A Guide for the Perplexed.* New York: Oxford Univ. Press.

Foote, William E., and Jane Goodman-Delahunty. 2004. *Evaluating Sexual Harassment: Psychological, Social, and Legal Considerations in Forensic Examinations.* Washington, D.C.: American Psychological Association.

LeMoncheck, Linda. 1997. *Sexual Harassment: A Debate.* Lanham, Md.: Rowman & Littlefield.

### Cross-references

Employment Law; Women's Rights.

West's Encyclopedia of American Law, edition 2. Copyright 2008 The Gale Group, Inc. All rights reserved.

**sexual harassment** n. unwanted sexual approaches (including touching, feeling, groping) and/or repeated unpleasant, degrading and/or sexist remarks directed toward an employee with the implied suggestion that the target's employment status, promotion or favorable treatment depend upon a positive response and/or "cooperation." Sexual harassment is a private nuisance, unfair labor practice, or, in some states, a civil wrong (tort) which may be the basis for a lawsuit against the individual who made the advances and against the employer who did not take steps to halt the harassment. A legal secretary recently won an award of more than $3 million against a prominent law firm for not controlling a partner notorious for his sexual harassment of female employees. (See: nuisance)

Copyright © 1981-2005 by Gerald N. Hill and Kathleen T. Hill. All Right reserved.

**sexual harassment** *noun* actionable annoyance at place of employment, actionable conduct, gender harassment in the workplace, offensive verbal abuse in the workplace, plan of physical harassment by superiors, policy of verbal harassment by superiors, unsolicited physical behavior in the workplace, unsolicited verbal abuse in the workplace, unwarranted advances, unwelcome sexual advances, verbal abuse at work
**Associated concepts:** hostile workplace

Burton's Legal Thesaurus, 4E. Copyright © 2007 by William C. Burton. Used with permission of The McGraw-Hill Companies, Inc.

How to thank TFD for its existence? Tell a friend about us, add a link to this page, add this site to iGoogle, or visit webmaster's page for free fun content.

Link to this page:

```
<a href="http://legal-
dictionary.thefreedictionary.com/Sexual+Harassment">sexual
harassment</a>
```

Please bookmark with social media, your votes are noticed and appreciated:

---

**Mentioned in**                                                                          ?

Armed Services                    Mackinnon, Catharine Alice
Colleges and Universities         NAACP
Contempt of Court                 National Organization for Women
Dworkin, Andrea                   Ombudsperson
Education Law                     quid pro quo
Feminist Jurisprudence            Reasonable Woman
gender discrimination             Rehnquist, William Hubbs
harass                            sex offender
harassment                        Starr, Kenneth Winston
Hill, Anita Faye                                                 More results

---

**References in periodicals archive**                                                     ?

These and other worrying statistics emerged from a research study on the
frequency of sexual harassment carried out by TEPAK.
*Workplace sexual harassment rampant in Cyprus* by *Cyprus Mail (Cyprus)*

the Dillard's Fashion Square Mall store must distribute policies to its work
force on preventing sexual harassment and retaliation; conduct sexual
harassment and anti-discrimination training; train employees responsible for
investigating sexual harassment complaints; submit to monitoring
throughout the decree's three-year duration; and post a notice about the
resolution of the case.
*Dillard's pays $110,000 to settle harassment suit* by *Henry, John /
Arkansas Business*

has a "zero-tolerance" policy toward sexual harassment and said the new
U.
*Rights group urges reform of UN justice system* by *EDITH M. LEDERER /
AP News*

More results

---

**Legal browser**                                    ?

sex with police officer
sex-ridden
sexton
Sexual Abuse
sexual abuse as a child
sexual assault
sexual deviation
sexual harassment
sexual harassment at work
sexual harassment by mechan'c
sexual molestation of 14 year old, charges
Sexual offender and having children
sexual unfaithfulness of a married person
sexually abuse
sexually assault

---

**Full browser**                                                                          ?

Sexual excitation            sexual generation              Sexual harrassment
Sexual Exploitation of       sexual generation              Sexual harrassment
Children                     sexual generation              Sexual harrassment
  Sexual fantasies           sexual generation              Sexual harrassment
  Sexual fantasy             sexual generation              Sexual harrassment
  Sexual favor               sexual harassment              Sexual harrassment
  sexual feelings              Sexual Harassment and        Sexual harrassment
  Sexual fidelity            Racism Prevention              Sexual harrassment
  Sexual fidelity              Sexual Harassment And        Sexual health
  Sexual Freedom Coalition   Rape Prevention Program        Sexual Health & Family
  Sexual function            sexual harassment by           Planning Act
  Sexual Function Inventory  mechanic                         Sexual Health and
Questionnaire                  Sexual Harassment            Empowerment
  Sexual functioning         Education Project              Sexual Health Awareness &
  Sexual game                  Sexual Harassment in the     Guidance
  Sexual game                Armed Services                  Sexual Health Awareness
  Sexual game                  Sexual Harassment in the     Group
  Sexual game                Armed Services                  Sexual Health Awareness
                               Sexual Harassment Referral   Week
                             Officer

---

⦿ TheFreeDictionary ◯ Google

[Search]   ?

⦿ Word / Article  ◯ Starts with  ◯ Ends with  ◯ Text

---

**Free Tools:**   For surfers: Free toolbar & extensions | Word of the Day | Bookmark | Help
                  For webmasters: Free content | Linking | Lookup box | Double-click lookup | Partner with us

Terms of Use | Privacy policy | Feedback | Copyright © 2010 Farlex, Inc.

Disclaimer
All content on this website, including dictionary, thesaurus, literature, geography, and other reference data is for
informational purposes only. This information should not be considered complete, up to date, and is not
intended to be used in place of a visit, consultation, or advice of a legal, medical, or any other professional.

GEORGIA DEPARTMENT OF LABOR - APPEALS TRIBUNAL
Suite 201, 1630 Phoenix Blvd., College Park, GA·30349-5506
770-909-2828  Fax 770-909-2884
appeals@dol.state.ga.us

Appealing Party  EMPLOYER              Docket# 51239-10
Notice Mailed    10/01/10

CLAIMANT                          JUSTIN LASTER
JUSTIN LASTER                     2014 ARMORY DR.
                                 AMERICUS, GA 31719

EMPLOYER
THE KRYSTAL CO., INC.

NOTICE OF **TELEPHONE HEARING** TO BE CONDUCTED
BY ADMINISTRATIVE HEARING OFFICER JOEL CALLAWAY

Date of Hearing  10/12/10              Time of Hearing  10:15 AM
                                       Eastern Time Zone

Administrative Hearing Officer will only call these telephone numbers.
Claimant (229)815-2296
Employer (229)439-2657

IF YOUR NUMBER IS NOT CORRECT, PLEASE NOTIFY US IMMEDIATELY BY EMAIL OR
PHONE NO LATER THAN 24 HOURS BEFORE THE HEARING.

THIS HEARING IS TO DETERMINE ELIGIBILITY FOR UNEMPLOYMENT INSURANCE
BENEFITS.

THE DECISION FROM THIS APPEAL HEARING MAY REQUIRE THE CLAIMANT TO REPAY
BENEFITS ALREADY RECEIVED.

**************WARNING---READ THESE INSTRUCTIONS CAREFULLY***************

Telephone numbers shown above must accept callers who do not display
their phone number.  It is in your best interest to provide a
telephone number that is not a cell phone or a pager.

INTERPRETER - If you need any type of interpreter to assist you during
the hearing, contact the Appeals Tribunal immediately.

NAMES AND ADDRESSES OF PARTIES MAILED THIS NOTICE ARE ON THE REVERSE SIDE

***HEARING ISSUES AND ADDITIONAL INSTRUCTIONS ON BACK - READ CAREFULLY***



GEORGIA DEPARTMENT OF LABOR - APPEALS TRIBUNAL
Suite 201, 1630 Phoenix Blvd., College Park, GA 30349-5506
770-909-2828  Fax 770-909-2884
appeals@dol.state.ga.us

DECISION OF ADMINISTRATIVE HEARING OFFICER - DOCKET# 51239-10

| | | | |
|---|---|---|---|
| Appealing Party | Employer | Decision Mailed | 10/13/2010 |
| Appeal Filed | 09/16/2010 | Appeal Rights Expire | 10/28/2010 |
| Hearing Date | 10/12/2010 | | |

Claimant
JUSTIN LASTER.

JUSTIN LASTER
2014 ARMORY DR.
AMERICUS, GA 31719

Employer
THE KRYSTAL CO., INC.

APPEARANCES: The hearing was held by telephone with the claimant and employer representative, Olivia Roberts, General Manager, participating.

O.C.G.A. PROVISIONS AND ISSUES INVOLVED: OCGA Section 34-8-194(2) - Whether the discharge or suspension of the claimant was for failure to follow orders, rules or instructions or failure to perform the duties for which employed.

OCGA Section 34-8-157(b) - Whether the employer supplied written separation information to the Department of Labor in a timely manner.

FINDINGS OF FACT: The claimant worked for the employer as a Production Manager, from January 4, 2010 through August 6, 2010, when the claimant was discharged for violation of the employer's Harassment Policy. On July 14, 2010, the claimant called an employee to discuss the employee's work place attire. The employee reported this conversation to the employer. The employer investigated the complaint and determined the claimant's conversation was a violation of policy. The claimant had received complaints from employee's under his charge that they were harassed by customers. The claimant was not trained in how to counsel employees on the dress code. The claimant intended his conversation with the employee to be a counseling on appropriate work place attire that may lessen customers harassing the employee.

The employer submitted timely separation information to the Department of Labor.

See reverse side

JUSTIN LASTER

Docket# 51239-10
Page 3


Georgia Dept. of Labor-Board of Review       Fax:404-232-3339
Suite 801, 148 Andrew Young International Blvd. NE
Atlanta, GA 30303


COPIES OF THIS DECISION WERE MAILED TO

JUSTIN LASTER                          THE KRYSTAL CO., INC.
2014 ARMORY DR.                        C/O THOMAS & THORNGREN,INC
AMERICUS, GA 31719                     PO BOX 280100
                                       NASHVILLE, TN  37228

THE KRYSTAL CO., INC.
1605 N SLAPPEY
ALBANY GA 31701



THOMAS & THORNGREN
client-centered. detail-driven.

October 6, 2010

Hearing Officer, Joel Callaway
Georgia Department of Labor
Appeals Tribunal
1630 Phoenix Blvd., Suite 201
College Park, GA 30349-5506

Fax No. (770) 909-2884

Re: Docket #: 51239-10

    Claimant: Justin Laster
    Social Security #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

To Whom It May Concern:

On behalf of the employer, The Krystal Co., Inc., we wish to submit the following documents as employer exhibits for the hearing scheduled on Tuesday, October 12, at 10:15 a.m. concerning the above referenced case.

Thank you for your courtesy and consideration with regard to this matter.

Sincerely,

Jared Williams
Account Representative

Cc:    Justin Laster
       2014 Armory Dr.
       Americus, GA 31719
       (229) 815-2296

This transmittal contains __2__ pages.

*Office:* 615.242.8246    *fax:* 615.242.5826    *www.thomasandthorngren.com*

One Vantage Way, Suite A-105  P.O. Box 280100  Nashville, TN 37228

PR-14
05-96



# COUNSELING REVIEW

(PRINT)

| NAME Justin Laster | DATE 6·16·10 |
|---|---|
| POSITION Production Mgr. | REST/DEPT a1b-002 |
| SS# | SUPERVISOR Olivia Robert |

SPECIFIC PROBLEM: conduct/performance/work rule violation/customer complaint (circle reason)
Engaged himself in a verbal brawl with another employee
william frazier also has asked 2 cashiers for their phone numbers
has called an employee a little child.

CORRECTIVE ACTION NECESSARY
was couseled about these issues with Gm & D's, was explained
this is never to happen again & must not attack people personally
& to maintain himself as a leader. This is final write-up
about these 3 issues. Termination will be Requested
from am & DS if this occurs again.

The problem must be satisfactorily resolved immediately. If it is not resolved or if it
occurs at a later date, further disciplinary action, up to and including termination,
will be taken.

EMPLOYEE COMMENTS

SUPERVISOR COMMENTS Please refrain from conflict. Stay professional
at all times. be sure to treat everyone with Respect. Enforce
& Follow all Company & Gm expectations & policies.

| I have read, discussed, and understand the problem(s) pointed out to me. | WITNESS (if needed) | DATE |
|---|---|---|

| EMPLOYEE | DATE | SUPERVISOR Olivia Rob | DATE 6·16·10 |
|---|---|---|---|

Distribution:    Original Personnel File         Copy Supervisor                    Copy Employee